IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSE ENRIQUE GORDILLO PORTOCARRERO, ) ) ) | |
| Movant, ) ) | No. 1:16-cv-00763 (LMB) |
| v. ) ) | No. 1:10-cr-00066-1 (LMB) |
| UNITED STATES OF AMERICA, ) ) | |
| Respondent. ) | |

MEMORANDUM OPINION

Before the Court is Jose Enrique Gordillo Portocarrero's ("movant" or "Gordillo") Motion to Vacate Under 28 U.S.C. § 2255 [Dkt. No. 35] ("Motion to Vacate") and the Government's Motion to Dismiss Defendant's Petition Under 28 U.S.C. § 2255 [Dkt. No. 47] ("Gov't Mot."). For the reasons that follow, the Government's Motion will be GRANTED, and Gordillo's Motion to Vacate will be DISMISSED.

I. BACKGROUND

A. **Factual Background**

On March 9, 2010, Gordillo waived indictment [Dkt. No. 13] and pleaded guilty to a two-count criminal information [Dkt. No. 14] charging him in Count 1 with aiding and abetting attempted murder in aid of racketeering in violation of Virginia Code §§ 18.2-26 and 18.2-32 and 18 U.S.C. §§ 1959(a)(5) and 2 and in Count 2 with aiding and abetting the discharge of a firearm during or in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. The aiding and abetting attempted murder charged in Count 1 was the predicate crime of violence for Count 2.

During the time of the charged offenses, Gordillo was a member of the Western Locos Salvatrucha ("WLS"), a subgroup of the Mara Salvatrucha Thirteen ("MS-13") gang that operated within the Eastern District of Virginia. Dkt. No. 17 ¶ 3. In the Statement of Facts, which was part of his Plea Agreement, Gordillo admitted that:

> In the evening hours on September 13, 2008, Gordillo drove to Sugarland Park, which is located in Sterling, Virginia, within the Eastern District of Virginia. At Sugarland Park, he picked up fellow MS-13 member Edgar Behitez Hernandez, a.k.a. "Shadow," a.k.a. "Clavo" and a MS-13 associate, K.C., a.k.a, "Sonic." Gordillo drove Benitez and K.C. to the Sterling Park area of Loudoun County, Virginia. Upon Benitez's entry into the vehicle, Gordillo observed the outline of what Gordillo believed was a firearm bulging out of Benitez's waistband.
> As the three individuals drove through Sterling Park, one of the passengers informed Gordillo that an 18th Street gang member was visible from the car. The 18th Street gang is a rival of MS-13 and members of MS-13 refer to rival gang members as "chavalas." Gordillo drove around the corner from where the rival gang member was first spotted.
> After parking his vehicle, Gordillo observed that K.C. had Gordillo's baseball bat. Gordillo and Benitez arranged that after Benitez and K.C. attacked the suspected rival gang member or members, they would return to where Gordillo was parked and get into his waiting vehicle. Gordillo observed Benitez and K.C. walk towards where the rival was last spotted. Gordillo then drove away from Benitez and K.C. Gordillo drove on or near Sterling Boulevard and as he drove he heard approximately two to three gun shots. After hearing the gun shots, Gordillo observed two police vehicles, with their emergency lights activated, responding towards the area where he had dropped off K.C. and Benitez. Gordillo received a phone call from Benitez explaining where to pick him up.
> Gordillo picked up Benitez and observed Benitez putting the pistol back into his pants. At some point later in the evening, Gordillo drove Benitez to a highway overpass where Benitez threw the spent ammunition casings out of the window. Finally, Gordillo drove Benitez to a shed behind a house in Maryland in an attempt to get rid of the firearm used in the shooting. The individual who was to take custody of the firearm never met Gordillo and Benitez. Gordillo drove Benitez, who still had the firearm, back to Virginia.
> The suspected rival gang member, W.R., and a pregnant female, J.V., were in fact wounded in the shooting that Gordillo drove Benitez and K.C. to commit on September 13, 2008.

Id. ¶¶ 5–9. On June 18, 2010, the Court sentenced Gordillo to 148 months of imprisonment—consisting of 28 months for Count 1 followed by 120 months for Count 2 with credit for time served—and a five-year term of supervised release, among other penalties. Dkt. No. 23. Gordillo

did not appeal either his conviction or sentence. On June 25, 2016, Gordillo filed his Motion to Vacate, in which he argues that the predicate offense of aiding and abetting attempted murder does not qualify as a "crime of violence" under the § 924(c)(3)(A) "force clause" and no longer qualifies under the § 924(c)(3)(B) "residual clause" because the residual clause is void for vagueness under Johnson v. United States, 135 S. Ct. 2551 (2015). Motion to Vacate 1–2. The Court stayed the motion pending the Supreme Court's decision in Sessions v. Dimaya, 138 S. Ct. 1204 (2018). Dkt. No. 40. On April 17, 2018, the Supreme Court issued its decision in Dimaya and, on April 19, 2018, the Court lifted the stay of the Motion to Vacate and set a briefing schedule. Dkt. No. 43. The Motion to Vacate has now been fully briefed, and the Court finds that oral argument would not aid the decisional process.

### B. Legal Background

Under 18 U.S.C. § 924(c):

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
> (i) be sentenced to a term of imprisonment of not less than 5 years;
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Id. § 924(c)(1)(A). Section 924(c) also provides a definition of the term "crime of violence" for purposes of that section:

> [T]he term "crime of violence" means an offense that is a felony and—
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

3

Id. § 924(c)(3). The two prongs of this definition are commonly referred to as the "force clause" and the "residual clause," respectively. Nearly identical definitions of a "crime of violence" have appeared in other sections of the United States Code. For example, 18 U.S.C. § 16 provides:

> The term "crime of violence" means—
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 16.[1] Similarly, 18 U.S.C. § 924(e) defines the term "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B).[2]

The current Motion to Vacate rests on two Supreme Court cases respectively addressing § 924(e) and § 16: Johnson v. United States, 135 S. Ct. 2551 (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018). In Johnson, the Supreme Court considered a due process vagueness challenge to the residual clause of § 924(e), which defines a violent felony as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another"

---

[1] Section 16 does not itself criminalize any conduct or prescribe any enhanced punishments related to crimes of violence. Instead, § 16 provides a generic definition of "crime of violence" that is incorporated into various other provisions of the United States Code. See, e.g., 8 U.S.C. § 1101(a)(43) (defining "aggravated felony" for purposes of immigration removal to include any "crime of violence (as defined in [§ 16], but not including a purely political offense) for which the term of imprisonment [sic] at least one year"); 18 U.S.C. § 25 (incorporating § 16 in criminalizing the use of a minor to commit a "crime of violence").

[2] Section 924(e), which is referred to as the Armed Career Criminal Act ("ACCA"), provides for a mandatory minimum sentence of fifteen years imprisonment for any individual who is convicted of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) and who has three previous convictions for violent felonies and/or serious drug offenses.

4

(the "ACCA residual clause"). See 135 S. Ct. at 2555. Although the Supreme Court had previously decided four different cases each involving the application of the ACCA residual clause to a specific state crime and had "rejected suggestions by dissenting Justices" in two of those cases that the ACCA residual clause violated "the Constitution's prohibition of vague criminal laws," id. at 2556, the Johnson Court reversed course, holding that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges" and that increasing "a defendant's sentence under the clause denies due process of law," id. at 2557.

As the Supreme Court explained, the ACCA residual clause required courts to use a framework known as the ordinary-case approach when determining whether a previous conviction of a particular state or federal crime qualified as a conviction of a violent felony. Under this framework, courts were required "to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents a serious potential risk of physical injury." Id. (internal quotation marks omitted). First, the Court observed that the ACCA residual clause "leaves grave uncertainty about how to estimate the risk posed by a crime" because "assessing 'potential risk' seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out" but the statute provides no guidance on how to determine what the "ordinary case" of a given crime includes. Id. at 2557–58. Second, the Court observed that the ACCA residual clause left "uncertainty about how much risk it takes" for this ill-defined "ordinary case" of a crime "to qualify as a violent felony." Id. at 2558.[3] Moreover, looking beyond its own cases, the Supreme Court acknowledged that the ACCA

---

[3] For further discussion of the problems the Supreme Court found with the ACCA residual clause in Johnson, see Chapman v. United States, 326 F. Supp. 3d 228, 234–35 (E.D. Va. 2018), appeal docketed, No. 18-6871 (4th Cir. July 20, 2018); Khan v. United States, 330 F. Supp. 3d 1076, 1084–85 (E.D. Va. 2018), appeal docketed, No. 18-6970 (4th Cir. Aug. 6, 2018); and Royer v. United States, 324 F. Supp. 3d 719, 726–27 (E.D. Va. 2018).

5

residual clause had created "numerous splits among the lower federal courts" both about "whether the residual clause covers this or that crime" and about "the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." Id. at 2560 (internal quotation marks omitted). Taking these factors together, the Supreme Court concluded that the ACCA residual clause was unconstitutionally vague.

In the wake of this decision, the lower federal courts began to disagree over whether the nearly identical residual clauses in § 16 and § 924(c), both of which shared some—but not all—of the features of the ACCA residual clause at issue in Johnson, were also unconstitutionally vague. In Dimaya, the Supreme Court resolved this split with respect to § 16, holding that § 16(b) "suffers from the same constitutional defect" identified in Johnson. 138 S. Ct. at 1210. In particular, the Dimaya Court read Johnson as relying on two specific features of the ACCA residual clause to find it unconstitutionally vague: "'By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause' violates the guarantees of due process." Id. at 1214 (quoting Johnson, 135 S. Ct. at 2558). According to the Court, § 16(b) "has the same two features . . . , combined in the same constitutionally problematic way." Id. at 1213. First, as with the ACCA residual clause, § 16(b) calls for an ordinary-case analysis and, because the "ordinary case" of a given crime remains an "inscrutable thing," § 16(b) does not provide a clear way to measure the risk posed by a given crime. Second, as with the ACCA residual clause, § 16(b) employs an uncertain risk threshold ("substantial risk") that, when applied to "an idealized ordinary case of the crime[,] . . . ceases to work in a way consistent with due process." Id. at 1215–16 (internal quotation marks omitted). Accordingly, the Dimaya Court held that § 16(b) was unconstitutionally vague.

Against these two decisions, Gordillo contends that § 924(c)(3)(B), which is worded almost identically to § 16(b), is also unconstitutionally vague.

## II. DISCUSSION

The government argues that consideration of the Motion to Vacate is barred by a variety of procedural obstacles. The same arguments were raised in three cases previously addressed by this Court, and for the reasons stated in <u>Chapman v. United States</u>, 326 F. Supp. 3d 228 (E.D. Va. 2018), <u>Khan v. United States</u>, 330 F. Supp. 3d 1076 (E.D. Va. 2018), and <u>Royer v. United States</u>, 324 F. Supp. 3d 719 (E.D. Va. 2018), these arguments fail. On the merits, the government argues that the predicate offense remains a crime of violence under the force clause and that the residual clause should be reinterpreted in accordance with principles of constitutional avoidance to apply an actual conduct approach, an approach this Court has accepted. Applying that approach, Gordillo's predicate offense remains a crime of violence under either clause of § 924(c)(3), and his Motion to Vacate will be dismissed. The Court will address each of the government's arguments briefly.

### A. <u>Timeliness Under 28 U.S.C. § 2255(f)</u>

The government first argues that the Motion to Vacate is untimely. In general, for a motion under § 2255 to be timely, it must be filed within one year of the date that the movant's conviction became final; however, "courts will consider a [§ 2255] motion timely if (1) [the movant] relies on a right recognized by the Supreme Court after his judgment became final, (2) he files a motion within one year from 'the date on which the right asserted was initially recognized by the Supreme Court,'" and (3) the right has been made retroactively applicable. <u>United States v. Brown</u>, 868 F.3d 297, 301 (4th Cir. 2017) (quoting 28 U.S.C. § 2255(f)). Because there is no question that Gordillo's motion was filed more than one year after his conviction became final, his Motion to Vacate is timely only if he is asserting a right that has

7

been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. For the reasons stated in Chapman, 326 F. Supp. 3d at 236–40, Khan, 330 F. Supp. 3d at 1086–90, and Royer, 324 F. Supp. 3d at 728–32, Gordillo's §924(c) argument in his Motion to Vacate asserts a right recognized in Johnson and confirmed in Dimaya and is therefore timely under § 2255(f)(3).[4] Accordingly, Gordillo's Motion to Vacate was timely filed.

### B. Facial Vagueness Challenge

Next, the government argues that Gordillo may not bring a facial challenge to § 924(c)(3)(B) because "[o]utside of the First Amendment context, a person 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Gov't Mot. 9 (quoting Holder v. Humanitarian Law Project, 561 U.S. 1, 18–19 (2010)). According to the government, Gordillo's conduct "falls within the 'core' of Section 924(c)(3)(B)" because it manifestly "'involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" Gov't Mot. 10 (quoting 18 U.S.C. § 924(c)(3)(B)). As such, the government argues that Gordillo cannot challenge § 924(c)(3)(B) as void for vagueness. For the reasons stated in Chapman, 326

---

[4] This determination is in accord with many of the federal courts that have addressed § 2255 motions presenting vagueness challenges to § 924(c) convictions in light of Dimaya, including some courts that have denied the motion despite allowing it to proceed under § 2255(f)(3). See, e.g., United States v. Barrett, 903 F.3d 166, 182 (2d Cir. 2018); Feria v. United States, No. 16-5105, No. 2018 WL 4502194, at *1 (D.N.J. Sept. 19, 2018); Young v. United States, No. 06-cr-285, 2018 WL 4409831, at *1 n.1 (E.D.N.Y. Sept. 17, 2018); United States v. Lasich, No. 3:02-cr-305, 2018 WL 3614024, at *2 (D. Or. July 27, 2018); Russaw v. United States, No. 2:15-cv-8146, 2018 WL 2337301, at *5 (N.D. Ala. May 23, 2018); Otero v. United States, No. 10-cr-743, 2018 WL 2224990, at *1 n.2 (E.D.N.Y. May 15, 2018); United States v. Lal, No. 2:12-cr-193, 2018 WL 2222720, at *1 (D. Nev. May 15, 2018); United States v. Brown, Crim. No. 11-15-2, 2018 WL 2171450, at *3 (W.D. La. May 10, 2018). But see Thomas v. United States, No. 2:11cr58, 2018 WL 3999709, at *3 (E.D. Va. Aug. 21, 2018) (finding petitioner's motion untimely because Johnson recognized the right and the motion was not raised within a year of Johnson).

8

F. Supp. 3d at 240–42, Khan, 330 F. Supp. 3d at 1090–92, and Royer, 324 F. Supp. 3d at 742–44, this argument fails, and Gordillo has standing to bring his constitutional challenge.

## C. Plea Agreement and Appellate Waiver

The government contends that Gordillo cannot challenge the constitutionality of § 924(c)(3)(B) because he pleaded guilty to the § 924(c) charge, his plea agreement included a waiver of the right to appeal the conviction, and an appellate waiver also bars collateral challenges that raise claims that could have been raised on direct appeal. Gov't Mot. 12.[5] This argument is unpersuasive for two reasons.

First, the Fourth Circuit has recently suggested that "a broad waiver of a substantive constitutional right"[6] would not be enforceable. Malvo v. Mathena, 893 F.3d 265, 276 (4th Cir. 2018). Because substantive rules speak to the power of the government to enforce particular laws and the ability of a court to impose criminal punishments based on violations of those laws, such

---

[5] The government also contends that movant's "guilty plea forecloses an as-applied vagueness challenge," because his representations during the plea hearing that he understood the nature of the charge against him "conclusively establish[] that § 924(c)(3)(B) was not vague as to him." Gov't Mot. 10–11 (formatting and capitalization altered). As even the government appears to concede, when movant's claim is properly understood as a facial attack on § 924(c)(3)(B) rather than an attack only on the statute's application to his circumstances, this argument has no force. Moreover, barring Gordillo's challenge on this basis would be in tension with the Supreme Court's recent residual clause jurisprudence, in which the Court has granted relief even to individuals who pleaded guilty and did not claim at the time that they did not understand the residual clause. See Welch v. United States, 136 S. Ct. 1257 (2016) (holding that Johnson applied retroactively on collateral review to a prisoner who had pleaded guilty and discussed the nature of the ACCA enhancement during the plea colloquy without claiming that he did not understand it, see Tr. [Dkt. No. 55], United States v. Welch, No. 0:09-cr-60212 (S.D. Fla. Dec. 14, 2010), and who had not raised a vagueness challenge on direct appeal, see United States v. Welch, 683 F.3d 1304 (11th Cir. 2012)).

[6] Neither party specifically discusses whether the rule relied on by movant is substantive; however, the Supreme Court held in Welch that the rule announced in Johnson was substantive because it "alter[ed] the range of conduct or the class of persons that the [ACCA] punishes." 136 S. Ct. at 1265 (internal quotation marks omitted). Because the rule in Dimaya functions in the same way, and because the result of accepting movant's argument and finding the residual clause void for vagueness would be to alter the range of conduct punished by § 924(c), the Court has no trouble in determining that the relevant claim relies on a substantive, rather than a procedural, right.

9

rights may not be waived by a criminal defendant. Cf. United States v. Cotton, 535 U.S. 625, 630 (2002) (explaining that jurisdictional questions relate to "the courts' statutory or constitutional power to adjudicate the case" and that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived"). Accordingly, the appellate waiver in movant's plea agreement is unenforceable with respect to the claim advanced in the present motion.

In addition, the Fourth Circuit has held that courts must "refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice," such as if a movant has "made a cognizable claim of actual innocence." United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016). For the reasons stated in Royer, 324 F. Supp. 3d at 733–35, Gordillo has appropriately presented a claim of actual innocence and his § 2255 motion falls outside the scope of his appellate waiver.

### D. Procedural Default

The government's last procedural argument is that Gordillo procedurally defaulted his vagueness challenge because he did not raise it at sentencing or on direct appeal; however, as the government recognizes, a procedural default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom.'" Gov't Mot. 13 (quoting United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012)). As an initial matter, for the reasons stated in Royer, 324 F. Supp. 3d at 733–35, Gordillo's claim asserts that he is actually innocent with respect to the § 924(c) charge.

Even if Gordillo were not claiming actual innocence, any procedural default would still be excused based on the cause-and-prejudice prong. Cause for default is established when "a constitutional claim is so novel that its legal basis [wa]s not reasonably available to counsel" at

the time of the default. Reed v. Ross, 468 U.S. 1, 16 (1984). Gordillo meets this standard because before Johnson, the Supreme Court had expressly held multiple times that the ACCA residual clause was not unconstitutionally vague, and a unanimous body of lower-court precedent had similarly rejected vagueness claims. See Royer, 324 F. Supp. 3d at 735 (collecting cases).

In addition to cause, Gordillo must show prejudice resulting from the default, which requires establishing a "reasonable probability" that, without the claimed error, the result of the underlying proceedings would have been different. Although the Court agrees with the government that movant's predicate offense remains a crime of violence, movant has still sufficiently alleged a claim of prejudice stemming from his default, because the standard requires articulating only a "reasonable probability," not a certainty, that the outcome would have been different. As such, the Court rejects the government's argument that movant can only show prejudice if he ultimately prevails on his claim and instead determines that if his claim is substantial enough to establish an ex ante reasonable probability of success, then he has met the prejudice prong. Since Dimaya, the Fifth, Seventh, Tenth, and D.C. Circuits have found that § 924(c)(3)(B) is unconstitutionally vague. See United States v. Salas, 889 F.3d 681, 686 (10th Cir. 2018); United States v. Eshetu, 898 F.3d 36, 37 (D.C. Cir. 2018); United States v. Davis, 903 F.3d 483, 486 (5th Cir. 2018); United States v. Cardena, 842 F.3d 959, 996 (7th Cir. 2016).[7] Although this Court ultimately disagrees with the conclusion reached by those courts, it is clear

---

[7] Many district courts have held the same. See, e.g., United States v. Simmons, No. 2:16cr130, 2018 WL 6012368, at *4 (E.D. Va. Nov. 16, 2018); LiCausi v. United States, No. 16-cv-279, 2018 WL 4054905, at *3 (D.N.H. Aug. 23, 2018); United States v. Rossetti, No. 99-10098, 2018 WL 3748161, at *3 (D. Mass. Aug. 7, 2018); United States v. Birdinground, No. CR 03-17, 2018 WL 3242294, at *4 (D. Mont. July 3, 2018); United States v. Adams, No. 16-cv-5979, 2018 WL 3141829, at *2 (N.D. Ill. June 27, 2018); United States v. Flores, No. 2:08-cr-163, 2018 WL 2709855, at *4 (D. Nev. June 5, 2018); United States v. Meza, No. CR 11-133, 2018 WL 2048899, at *4 (D. Mont. May 2, 2018).

that movant's claim is substantial. Therefore, he has sufficiently alleged cause and prejudice, and any procedural default is excused.

### E. Analysis Under § 924(c)(3)(A)

On the merits, the government argues that Gordillo's § 924(c) conviction should not be vacated because the predicate crime—aiding and abetting an attempted murder—qualifies as a crime of violence under the force clause, § 924(c)(3)(A), the constitutionality of which was not called into question by Johnson or Dimaya. Under the force clause, any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" is a "crime of violence." According to the government, Gordillo's offense falls under this clause because "attempted murder is as much a crime of violence as murder itself because it has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Gov't Mot. 18. This argument is persuasive.

As is obvious from the plain language of the force clause, analyzing whether a particular offense falls within its ambit requires the Court to focus on "the statutory definition of the offense." United States v. Fuertes, 805 F.3d 485, 498 (4th Cir. 2015) (internal quotation marks and alterations omitted). In particular, the Court must examine the "element[s]" of the claimed predicate offense and determine whether any element necessarily involves "the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). Gordillo was convicted of "attempting to commit murder" in aid of racketeering in violation of § 1959(a)(5). The elements of § 1959(a)(5) are: (1) an agreement (2) to commit a murder (3) for the purpose gaining entrance to or maintaining or increasing a position in an enterprise engaged in racketeering activity. United States v. McIntyre, 639 F. App'x 171, 173 (4th Cir. 2016) (per curiam).

The crime of murder requires, as an element, that a violator of the statute use force, attempt to use force, or threaten to use force. The Fourth Circuit has held that one cannot commit federal murder "without a use of physical force capable of causing physical pain or injury to another." In re Irby, 858 F.3d 231, 238 (4th Cir. 2017). In addition, murder as defined by Virginia Code § 18.2-32 has been found to constitute a crime of violence pursuant to the force clause of § 924(c). See United States v. Cuong Gia Le, 206 F. Supp. 3d 1134, 1148 (E.D. Va. 2016) (discussing how "it does not matter ... that the harm occurs indirectly, rather than directly" (citing United States v. Castleman, 572 U.S. 157, 171 (2014))). Therefore, murder, whether defined under federal law or Virginia law, has as an element the use, attempted use, or threat of use of force. See United States v. Simmons, No. 2:16cr130, 2018 WL 6012368, at *2 (E.D. Va. Nov. 16, 2018) ("To the extent that the Court failed to state on the record that its analysis of Virginia law leads to the conclusion that VICAR [Violent Crimes in Aid of Racketeering] murder, as cross-referenced to Virginia law, is itself a 'crime of violence' under § 924(c)(3)(A), the Court expressly makes such finding [sic] now."). This conclusion, that the killing of another necessarily involves violence, should be uncontroversial.

The wrinkle in this otherwise straightforward analysis is that Gordillo did not commit murder, but rather aided and abetted attempted murder. Yet neither the "aid and abet" nor the "attempt" changes Gordillo's liability. According to the plain language of the force clause itself, the "attempted use" of force is indistinguishable from "the use" of force. § 924(c)(3)(A). In addition, "[s]everal circuits have held that attempting to commit a substantive offense that qualifies as a violent felony also constitutes a qualifying violent felony." United States v. Holland, No. 18-4033, 2018 WL 4361158, at *3 (4th Cir. Sept. 13, 2018) (per curiam) (citing Hill v. United States, 877 F.3d 717, 719–20 (7th Cir. 2017) and United States v. St. Hubert, 883 F.3d 1319, 1334 (11th Cir. 2018), vacated and superseded 909 F.3d 335, 351 (11th Cir. 2018)

13

(holding that attempted Hobbs Act robbery qualifies as a crime of violence under the force clause because that clause expressly includes "attempted use" of force)). The Eastern District of Virginia has concluded that "the federal VICAR attempted murder" is a crime of violence under the force clause set forth in § 924(c)(3)(A). Simmons, 2018 WL 6012368, at *3. Therefore, that an aspect of Gordillo's conviction was attempted murder does not remove this crime from qualifying as a crime of violence under the force clause.

The aiding and abetting aspect of Gordillo's conviction also offers him no relief. It is a fundamental tenet of our criminal justice system that one who aids and abets the commission of an offense "is punishable as a principal." 18 U.S.C. § 2(a). Aiding and abetting is not a "separate offense but rather a theory of liability ... [f]or that reason, one who aids and abets Hobbs Act robbery is liable under § 924(c) on the same basis as the principal." United States v. Pimble, No. 1:16cr6, 2017 WL 3783639, at *3 (E.D. Va. Aug. 31, 2018) (citing In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016)); see also United States v. Ward, 698 F. App'x 178, 178 (5th Cir. 2017) (per curiam) (holding that aiding and abetting an armed bank robbery constituted a crime of violence under § 924(c)). Gordillo is thus unable to insulate himself from, and remains exposed to, the same criminal liability for having aided and abetted an attempted murder as those who attempted the murder.

Gordillo's last argument is that he was convicted of "attempting or <u>conspiring</u> to commit murder" in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5), and that because a conspiracy does not necessarily involve the use of force, the predicate offense is not a crime of violence. Pet'r's Reply Gov.'s Resp. [Dkt. No. 48] 21 (emphasis added). Gordillo bases this argument on the Fourth Circuit's holding that because conspiracy under § 1959(a)(5) does not require an overt act, conspiracy to murder in aid of racketeering is not a crime of violence under the force clause of U.S.S.G. § 4B1.B, a clause nearly identical to § 924(3)(c)(A). See United

14

States v. McCollum, 885 F.3d 300, 309 (4th Cir. 2018). Contrary to this argument, the Fourth Circuit's discussion of the appellant's conviction in McCollum, in which it focused exclusively on "the conspiracy component of his conviction," 885 F.3d at 307, strengthens the government's position here that § 1959(a)(5) is divisible, making attempt to commit murder and conspiracy to commit murder two separate crimes. Gov.'s Reply Br. Further Supp. Mot. Dismiss Def.'s Pet. [Dkt. No. 49] 11.

Section 1959(a) describes multiple separate offenses including attempt to commit murder and conspiracy to commit murder.[8] Gordillo was charged with only one of those crimes: attempted murder. It has been established that § 1959(a) is divisible by subsections, see Cousins v. United States, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016), and the Fourth Circuit's analysis in McCollum, 885 F. 3d at 307–09, exclusively discussing conspiracy and not attempt, suggests that it is divisible by clauses as well. This conclusion is strengthened by Mathis v. United States, 136 S. Ct. 2243 (2016), in which the Supreme Court permitted federal judges to look at the record itself to determine "whether the listed items are elements of the offense." Id. at 2256–57.

There is no basis in this record for arguing that Gordillo was either charged or convicted of conspiracy to commit murder. The criminal information only charged Gordillo with aiding and abetting "unlawfully and knowingly attempt[ing] to murder [two victims]," Dkt. No. 14, the plea agreement described the charge as aiding and abetting "attempted murder," Dkt. No. 16, and the judgment listed the offense in Count 1 as aiding and abetting "attempted murder," Dkt. No.

---

[8] Specifically, § 1959(a) criminalizes multiple acts in furtherance of racketeering activity including murder, kidnapping, maiming, assault with a dangerous weapon, and attempts or conspiracies to do these acts. Each subsection has a different sentencing exposure. For example, § 1959(a)(1) provides that for murder the offender is exposed to death or life imprisonment, among other penalties, whereas under § 1959(a)(5), the provision which applies to Gordillo, the exposure for either an attempt or conspiracy to commit murder or kidnapping is ten years imprisonment, among other penalties.

15

24. From these documents, it is clear that the only predicate offense for Count 2 was aiding and abetting attempted murder and that any claim Gordillo was convicted of conspiracy fails.

Accordingly, § 1959(a)(5), the claimed predicate offense involved in this case, has "as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A), and therefore qualifies as a crime of violence under the force clause.

### F. Analysis Under § 924(c)(3)(B)

Because attempted murder in aid of racketeering is a crime of violence under the force clause of § 924(c)(3)(A), the residual clause in § 924(c)(3)(B) is not implicated in this motion. Even if it were implicated, Gordillo would not prevail because this Court has concluded that the residual clause is not unconstitutionally vague if an actual conduct approach is used to evaluate whether a defendant has violated the statute. See Chapman, 326 F. Supp. 3d at 244–47; Khan, 330 F. Supp. 3d at 1093–97; Royer, 324 F. Supp. 3d at 738–41.[9] Applying this approach, Gordillo's conduct clearly constituted a crime of violence under the residual clause as well.

Gordillo admitted driving his fellow gang members, who he knew were armed—one with a firearm and the other with a baseball bat—to the suspected location of a rival gang member. Dkt. No. 17 ¶¶ 5–6. Gordillo's services as driver enabled the shooting because without him the shooter would not have gotten to the scene and would not have had a way to flee the scene. Gordillo's behavior—dropping off two armed men and agreeing to return after the crime was complete to help the shooter flee— "create[d] a substantial risk that physical force against the person or property of another [would] be used." § 924(c)(3)(B). Accordingly, the Court finds that Gordillo's conviction under § 1959(a)(5) would constitute a predicate crime of violence under §924(c)(3)(B), if that section applied.

---

[9] The actual conduct approach to the residual clause has been favored by some courts, see, e.g. United States v. Barrett, 903 F.3d 166, 178–83 (2d Cir. 2018).

## III. CONCLUSION

For the reasons stated above, Gordillo's Motion to Vacate [Dkt. No. 35] will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 11th day of January, 2019.

Alexandria, Virginia

/s/ *(signature)*
Leonie M. Brinkema
United States District Judge